## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| BRUCE GUESS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-04558-TWP-MG |
| ) | |
| SCOTT LEVINE, Dr., ) | |
| ) | |
| Defendant. ) | |

### ORDER GRANTING DEFENDANT'S
### UNOPPOSED MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Scott Levine, D.O., ("Dr. Levine") Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. (Dkt. 36.) Plaintiff Bruce Guess ("Mr. Guess"), an inmate at the Indiana Department of Correction, alleges that Dr. Levine violated his Eighth Amendment rights by failing to properly prescribe needed medications after Mr. Guess arrived at Pendleton Correctional Facility. (Dkt. 11.) Mr. Guess did not respond to the summary judgment motion. Because there is no evidence that Dr. Levine was deliberately indifferent to Mr. Guess' serious mental health needs, his Motion for Summary Judgment is **granted.**

### I. STANDARD OF REVIEW

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, Dr. Levine has met that burden through his unopposed motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). Because Mr. Guess failed to respond, the facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1; *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). *See also* Dkt. 119 (warning plaintiff that the failure to file a response in opposition would result in the motion for summary judgment being considered unopposed). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II.  UNDISPUTED FACTS

Mr. Guess is a state prisoner at Pendleton Correctional Facility ("Pendleton"). He receives mental health treatment for panic disorder, major depressive disorder, and antisocial personality disorder. (Dkt. 38-1 at 1.) Mr. Guess filed this lawsuit against Dr. Levine because he believes Dr.

Levine should not have discontinued his prescriptions for two medications: Cogentin and Zyprexa. (Dkt. 38-3 at 5.)

Dr. Levine is a psychiatrist licensed to provide mental health treatment services in Indiana. (Dkt. 38-2 at ¶ 1.)  Dr. Levine had several opportunities to see and treat Mr. Guess.  *Id.* at ¶ 4 (citing Dkt. 38-1).

In February 2018, Mr. Guess was transferred to Pendleton from Miami Correctional Facility.  (Dkt. 38-3 at 6-7.)  Mr. Guess was prescribed a number of medications upon his transfer, including Mobic, Pamelor, Effexor XR, Zyprexa, and Benztropine, which is a generic substitute for Cogentin.  Based upon Dr. Levine's review of the records, it appeared that Mr. Guess had only recently been prescribed the Zyprexa and Cogentin in January 2018.  (Dkt. 38-2 at ¶ 5.)

Dr. Levine initially met Mr. Guess on March 16, 2018.  (Dkt. 38-2 at ¶ 6.)  During their first appointment, Dr. Levine completed a thorough evaluation of Mr. Guess' medication and past mental health treatment in order to gain a solid understanding of his history.  *Id.* at ¶ 25.

During their session, Mr. Guess stated he was prescribed the medications because he becomes violent when he does not take them and has had difficulties managing conflict. After completing his assessment, Dr. Levine believed Mr. Guess would benefit from reducing certain medications as it appeared that the multitude of medications were likely causing some sort of cognitive impairment, as objectively demonstrated by impairments on a digit span test and the Folstein Mini Mental Status Examination. Mr. Guess admitted that he stopped taking his prescribed Nortriptyline, which is more commonly known as Pamelor, and so that medication was discontinued.  (Dkt. 38-2 at ¶ 6.)

Considering that Mr. Guess continued to display cognitive impairment after self-discontinuing the Nortriptyline, Dr. Levine believed that Mr. Guess' medications were likely

playing a factor in his cognitive impairment. *Id.* at ¶ 7. As Mr. Guess had only recently been prescribed both the Zyprexa and Cogentin, there were no significant clinical risks to Mr. Guess to taper one of these medications to determine if improvements could be made. *Id.* at ¶ 25. Since Mr. Guess was prescribed an extremely low dose of Zyprexa, it seemed unlikely that Cogentin was needed. Mr. Guess stated that his withdrawal symptoms had been problematic in the past, but Dr. Levine did not believe there were any other more effective options to provide Mr. Guess with treatment for tricyclic antidepressant discontinuation syndrome. Mr. Guess was reluctant to taper his medication but agreed by the end of the session. *Id.* at ¶ 7.

Dr. Levine next met with Mr. Guess on April 16, 2018, at that time he reported he was suffering from anxiety attacks and poor sleep. *Id.* at ¶ 8. Mr. Guess requested Zoloft but refused to discontinue the prescription for Effexor in order for the Zoloft to be prescribed. They discussed possibly changing Mr. Guess' dose of Effexor to the morning and reducing the dosage to address noradrenergic activity that could have been contributing to his symptoms, but he refused that recommendation. The medication records confirmed that Mr. Guess had been refusing his prescription for Pamelor. However, Dr. Levine observed that Mr. Guess displayed an improvement in his cognition at this appointment. He further advised that the Cogentin prescription was unlikely to be needed as Dr. Levine believed the medication was impairing Mr. Guess' cognition. Dr. Levine ordered the Cogentin be tapered over time and that Mr. Guess continue taking all other medications as prescribed. *Id.* at ¶ 8.

On May 17, 2018, Dr. Levine met with Mr. Guess. Mr. Guess expressed his resentment towards Dr. Levine for removing some of his medications, specifically the Cogentin. Mr. Guess reported that he had been experiencing intermittent jerking in his legs during the night but denied any other drug-induced movement disorders. Dr. Levine completed a physical assessment of

Mr. Guess and did not identify any objective signs of a drug-induced movement disorder. Mr. Guess reported little improvement in his mood, but Dr. Levine advised him that poor compliance with medication will limit the benefit of the prescribed medications. Mr. Guess initially denied that he was noncompliant with medication but eventually conceded that he had been noncompliant. Mr. Guess continued taking the prescribed Mobic, Effexor, and Zyprexa. Cogentin had been completely phased out by this appointment. *Id.* at ¶ 10.

Dr. Levine did not meet with Mr. Guess again until August 31, 2018. *Id.* at ¶ 13. Mr. Guess reported that he had not been taking the Zyprexa as prescribed since their last visit and stated he would continue not taking it unless the Cogentin was prescribed again. Dr. Levine had previously discontinued the Cogentin due to his clinical belief that the medication was causing cognitive impairment. There were indications that Mr. Guess' cognition had improved since discontinuing the Cogentin, and there was no clinical need identified for that type of medication to be prescribed again. Dr. Levine advised Mr. Guess that medication deemed to be unnecessary or inappropriate would not be prescribed to reduce the threat of him being non-compliant with his other medications. After his assessment, Dr. Levine reduced the dose of Mr. Guess' Effexor prescription as the current dose was above the FDA-approved range of being safe or effective, and the effects from the high dose may have been contributing to the negative symptoms Mr. Guess identified. *Id.* at ¶ 13.

On October 4, 2018, when Dr. Levine met with Mr. Guess, Mr. Guess indicated that he had a lack of energy and diminished motivation. Mr. Guess, however, refused to consider changing his antidepressant. They discussed the risks of Mr. Guess' refusal to change the antidepressant, and he stated that he could not tolerate the medication, Cymbalta, even though Dr. Levine had not seen any record of Mr. Guess' usage of that medication during his incarceration,

5

and Mr. Guess had been incarcerated throughout the entire time this medication had been available to physicians. However, Mr. Guess did not voice any concerns or requests to restart the Cogentin as he had previously. Dr. Levine ordered that labs be completed to rule out any medical factors relating to Mr. Guess' complaints about depressive symptoms. *Id.* at ¶ 15.

On January 22, 2019, Dr. Levine met with Mr. Guess and noted that Mr. Guess' compliance with his medication had improved. Mr. Guess reported that he was tolerating his current medication regime well and denied any recurrence of negative symptoms. Mr. Guess expressed that he wished to continue his current treatment. *Id.* at ¶ 18.

On April 16, 2019, Mr. Guess denied any recurrence of depressive symptoms and reported that he was tolerating his medication well. Mr. Guess appeared normal and was cooperative with Dr. Levine during the appointment, and he was taking all medications as prescribed. Mr. Guess did not voice any concerns or complaints regarding the medication and wished to continue with the treatment plan. *Id*. at ¶ 19.

On August 7, 2019, Mr. Guess appeared for an appointment, where he reported no recurrence of any negative symptoms and stated that he was tolerating the current medications well. He did not voice any complaints or concerns during this appointment, and Dr. Levine ordered that the current treatment continue. *Id.* at ¶ 22.

Throughout their time working together, Mr. Guess' medications were regularly monitored to ensure that he was receiving the greatest possible benefit from each prescribed medication. *Id.* at ¶ 27.

Dr. Levine's recommendations were based upon his medical training and judgment to ensure that Mr. Guess had the most effective and appropriate medical care based upon presented concerns. Once the Cogentin was discontinued, Dr. Levine continued to observe a gradual

improvement in Mr. Guess' cognition.  Over time, Mr. Guess no longer requested that his medications be changed or that the Cogentin be added back in as a regular medication.  *Id.* at ¶ 28.

Mr. Guess no longer meets with Dr. Levine and currently meets with Dr. Mays for ongoing mental health treatment.  Dr. Mays has not prescribed either Cogentin or Zyprexa for Mr. Guess.  (Dkt. 38-3 at 6 and 9.)

### III. DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Mr. Guess alleges that Dr. Levine was deliberately indifferent to his serious mental health needs because Dr. Levine altered his prescription medications. Dr. Levine accepts as true that Mr. Guess has a serious medical condition which requires treatment.  (Dkt. 37 at 14-15.)  He argues, however, that there is no evidence that he was deliberately indifferent to Mr. Guess' serious medical needs.

The unopposed record reflects that Dr. Levine made medication changes as Mr. Guess' treating prescriber based on his medical judgment and training.  There is no evidence to suggest

7

that Dr. Levine failed to provide appropriate mental health care to Mr. Guess at each of their encounters.

For example, at their first appointment Dr. Levine completed a thorough evaluation of Mr. Guess' medication and past mental health treatment to understand Mr. Guess' health history. (Dkt. 38-2 at ¶ 25.) Based on objective testing, Dr. Levine believed Mr. Guess' medication was causing a cognitive impairment and thus made the clinical decision to wean down his medications over time. *Id.* at ¶¶ 6-8. As Mr. Guess had only recently been prescribed both the Zyprexa and Cogentin in January 2018, there were no significant clinical risks to Mr. Guess to taper one of these medications a few weeks later to determine if improvements could be made. *Id.* at ¶ 25. While Dr. Levine slowly weaned Mr. Guess off the Cogentin, it was Mr. Guess' decision to stop taking the prescribed Zyprexa. (Dkt. 38-3 at 7 and 8.) There is no evidence Mr. Guess suffered any harm as a result of Dr. Levine's actions or inactions; to the contrary, Mr. Guess' cognition improved over time. (Dkt. 38-2 at ¶ 28.)

In the absence of any evidence of deliberate indifference, Dr. Levine is entitled to judgment as a matter of law.

## IV.  CONCLUSION

Dr. Levine's unopposed Motion for Summary Judgment, Dkt [36], is **GRANTED.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 9/24/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bruce Guess, #167164
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ  KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com